(February 8, 1898.)

STEUNENBERG, GOVERNOR, *v.* STORER, STATE TREASURER.

[52 Pac. 14.]

CAPITOL BUILDING FUND.—Under the provisions of an act providing for the erection of a capitol building at Boise City and the issuance of state bonds and creating a capitol building fund out of which said bonds and interest thereon were to be paid (see Special and Local Laws of Idaho, p. 14), it was not intended to create a permanent capitol building fund.

TEMPORARY STATUTE—AUDITOR—TREASURER.—Said fund was temporary
and only to continue until said bonds and interest were fully paid,
and after that the revenue appropriated to said fund must be
turned into the general fund of the state, until otherwise pro-
vided by law.

(Syllabus by the court.)

An original proceeding by writ of mandate.

Hawley & Puckett and Frank A. Fenn, for Petitioner.

The statutes bearing upon the question are Revised Statutes,
section 232, Revised Statutes, section 1640, Special and Local
Laws, sections 32-45. (1st Sess. Laws, 14.) The only ques-
tion that is before the court is upon the construction of the
statutes referred to. It is an undeniable rule in the construc-
tion of statutes that the legislative intent must govern.
(Sutherland on Statutory Construction, 219, 234, 237, 245, 246;
Endlich on Interpretation of Statutes, sec. 295; *Smith v. Ran-
dall,* 6 Cal. 47, 65 Am. Dec. 475; *Bell v. New York,* 105 N. Y.
139, 11 N. E. 495; *Chandler v. Lee,* 1 Idaho, 349, and authori-
ties cited.) If possible a statute must be so construed as to
make it effect the purpose for which it was intended. (Endlich
on Interpretation of Statutes, sec. 29, p. 37.) The purpose in-
tended to be accomplished by the act is justly looked to in order
to determine the true construction of the act. (Endlich on
Interpretation of Statutes, sec. 27, p. 36; Sutherland on Statu-
tory Construction, secs. 219, 241; *Leadville etc. Co. v. City of
Leadville,* 9 Colo. App. 400, 49 Pac. 268; *Henderson v. Mayor,*
92 U. S. 259-268; *Sheriff v. Parish,* 37 La. Ann. 788, 789; *Big
Black Creek Imp. Co. v. Commonwealth,* 94 Pa. St. 450-455;
*Tonnele v. Hall,* 4 N. Y. 140-144.) A temporary statute con-
tinues in force, unless it be sooner repealed, until the time for
which it is made expires. (9 Bacon's Abridgment, tit. "Stat-
utes," subd. "D," p. 223.) A temporary act operates till its
time expires. (Sutherland on Statutory Construction, sec. 136;
*Brown v. Barry,* 3 Dall. 365-367.)

SULLIVAN, C. J.—This is an original action, brought in
this court by Frank Steunenberg, governor of Idaho, against
George H. Storer, treasurer of the state, to compel him to place

in the general fund of the state the amount of money held by him in what is known as the "Capitol Building Fund." It appears that the legislature of the territory of Idaho, in 1885, authorized the issuance of the bonds of the territory, to the amount of $80,000, for the purpose of erecting a capitol building in Boise City, and provided a fund to pay the principal and interest on said bonds, and also provided that the territorial portion of the money to be derived from licenses collected should be placed in a fund to be called the "Capitol Building Fund," and to be used in the payment of said bonds and interest. (See Sess. Laws 1885, p. 62.) In 1891 an act was passed directing the state treasurer to invest the surplus moneys of said capitol building fund in state warrants. (See Sess. Laws 1891, p. 14.) It is alleged that said bonds and interest are fully paid, and that there are now over $17,000 in said capitol building fund, and that the said treasurer refuses either to pay said money into the general fund or to invest it in state warrants. The alternative writ of mandate was issued. The defendant appeared, and demurred to the petition, on the ground that it did not state a cause of action, and moved to quash the writ for the same reason. The demurrer was orally argued by J. H. Hawley and Frank A. Fenn, Esqs., on behalf of the plaintiff, and by S. L. McFarland, Esq., on behalf of the defendant. R. E. McFarland, attorney general, appeared, and stated to the court that as this was a suit between two state officers, and as he had advised the defendant as to his duty in the matter in controversy, he declined to appear for either plaintiff or defendant; but, during the hearing, the attorney general appeared *amicus curiae,* and made an argument, in which he took the position that the defendant was not authorized either to turn the fund in dispute into the general fund or to invest the same in state warrants. The contention of the defendant is that no limitation is placed upon the life or existence of the capitol building fund created by section 38, page 14, Special and Local Laws of Idaho (see, also, Laws 13th Sess., p. 62) ; and that, as the indebtedness which said fund was created to liquidate has all been paid, he is not authorized to invest the surplus of said fund in warrants, and for that reason his duty is to hold said

fund intact until the legislature shall make proper disposition of it. In the determination of the question involved, certain sections of the statute must be considered.

Section 232 of the Revised Statutes declares of what moneys the general fund of the state shall consist, and is as follows:

"Sec. 232. The general fund consists of moneys received into the treasury and not specially appropriated to any other fund."

Section 1640 of the Revised Statutes requires one-tenth of all receipts from licenses to be paid into the state treasury; and the act creating the capitol building fund provides that the treasurer shall set apart all moneys received by him on account of licenses of every kind and description, collected under the revenue laws of the territory, and that the same (with rents derived from the capitol building) shall constitute the capitol building fund.

Section 38, page 14 of the Special and Local Laws of Idaho, is as follows:

"Sec. 38 (sec. 7). For the purpose of creating a fund to pay the interest coupons and the principal of said bonds, the territorial treasurer is hereby empowered and directed, from and after the passage of this act, to set apart all moneys that shall be received by him on account of licenses of every kind and description collected under the revenue laws of the territory, and all rents that may be derived from said building, and the same shall constitute a separate and distinct fund to be known as the 'capitol building fund.' And the territorial treasurer shall pay the interest on said bonds, when due, out of said fund, taking the coupons as his vouchers therefor. And after the expiration of ten years from the issuance of any of said bonds, whenever there shall be $5,000 or more in said fund provided for in this section over and above the amount required for the payment of interest coupons due, or to become due within the next ensuing six months, the treasurer shall use such surplus money in the redemption of said bonds according to the number and date of their issue, of which the treasurer shall give notice by publication once a week in some newspaper published in the county of Ada, and from the date of the last publication of such notice, the bonds proposed to be redeemed shall cease to draw

interest; and if any such bonds shall not be presented within sixty days from the date of the last publication of such notice the treasurer shall apply the money for the redemption of bonds next in order of the number and date of their issue." (See, also, same section, Laws 13th Sess., p. 62.)

At the first session of the legislature of this state it appears that a considerable surplus had accumulated in said capitol building fund, and it being desirous to invest said surplus in state warrants, and thereby save to the state interest accumulating on such warrants, the following act was passed.

"An act to authorize and require the state treasurer to invest the surplus moneys of the capitol building fund in state warrants.

"Be it enacted by the legislature of the state of Idaho:

"Section 1. Whereas, prior to the time when the capitol building bonds, issued under section 37 of the Special and Local Laws, shall become subject to redemption as provided by said section, the amount of money in the capitol building fund provided for by section 38 of the Special and Local Laws, shall exceed the amount required for the payment of the interest coupons of said bonds due or to become due within the next ensuing twelve (12) months, the state treasurer shall use such surplus in payment of any warrant drawn upon him by the state auditor and presented for payment and not paid for want of money in the fund upon which they are drawn properly applicable thereto, and shall register and indorse such warrants as provided by section 238 of the Revised Statutes and place the same so indorsed to the credit of the capitol building fund, and such warrants shall bear interest and be payable in due course as other outstanding warrants; and when paid the principal and interest thereof shall belong to the capitol building fund and shall be in like manner reinvested until said bonds become redeemable as aforesaid.

"Sec. 2. There now being a large surplus idle and unproductive in said capitol building fund and an insufficient amount in the general fund of the treasury to pay warrants as presented, an emergency exists, and this act shall go into effect from and after its passage.

"Approved January 17, 1891." (See Sess. Laws 1891, p. 14.)

The language of said last-mentioned act seems to imply that the investment of the surplus of said fund in state warrants was only to be made until said bonds and interest were redeemed and paid. It is admitted by the pleadings that said bonds, with interest thereon, were fully paid in 1896, and that there is no indebtedness remaining unpaid which said fund was created to pay. The language used in said last-mentioned act commands the investment of said surplus in state warrants until the bonds and interest therein referred to are paid or become redeemable. It does not direct that any money remaining in said fund after said bonds and interest are paid shall be invested in state warrants. In determining the issue in this case, we must consider the sections of the statutes above cited. The words used in said last-cited act commands the investment of said surplus, in state warrants, until the said bonds become redeemable. There it leaves the matter. It does not direct that any money remaining in said fund after said bonds and interest had been paid shall be invested in state warrants. All moneys paid into the state treasury, derived from licenses, were turned into said capitol building fund, and constituted substantially all of said fund, except a few dollars received for rental of a portion of the capitol building. The state's proportion of the revenue arising from licenses had been used for other territorial purposes prior to the creation of said capitol building fund. The evident intention of the legislature in creating said capitol building fund was to provide for the payment of the bonds authorized to be issued by said act for the erection of a capitol building at Boise City. (See Special and Local Laws of Idaho, secs. 32-45, p. 14.) It was not the intention to create a permanent fund. When the purpose for which said fund had been established was accomplished, there was no necessity for its existence longer; and it was not the intention of the legislature creating said fund that the treasurer should pass to said fund any money after said bonds and interest thereon had been paid and redeemed. Said fund could only be used for a specific purpose, to wit, that of paying said bonds. The

intention was to divert the money derived from licenses from the general fund, and use it in the payment of said bonds, and, when they were redeemed, to cease to so divert it. The act creating said fund is plain. Section 38 declares: "For the purpose of creating a fund to pay the interest coupons and the principal of said bonds the territorial treasurer is hereby empowered and directed from and after the passage of this act to set apart all moneys that shall be received by him on account of licenses," etc. Said capitol fund was created for a temporary purpose. That purpose having been fully accomplished, the fund ceased to exist, and thereafter the treasurer was not authorized, under the provisions of said section 38, to place any money therein. The reason for creating said fund had ceased, and the money which supplied it must go back to the fund from which it was diverted, unless otherwise provided by law. Said statute was a temporary one. It was limited in its duration at the time of its enactment. It created a fund for the payment of the principal and interest on certain bonds, and continued in force until such principal and interest were fully paid, and no longer.

It is contended by counsel for defendant that under the provisions of section 206 of the Revised Statutes, the auditor must direct the treasurer into which of the various funds established by law he must place the revenue collected by the state; that the auditor has directed the defendant to place the state's portion of all money derived from licenses in said capitol building fund, and that is the end of the matter so far as the treasury is concerned. There is nothing in that contention. As said fund was not a permanent one, and as the purpose for which it was created or established has been accomplished, the auditor had no authority to direct the treasurer to place money therein. If the auditor directs the treasurer to place money in a fund contrary to law, the treasurer should decline to do so. And again, it is provided by said section 38, *supra,* that, "for the purpose of creating a fund to pay the interest coupons and the principal of said bonds," the treasurer is directed to set apart all moneys received on account of licenses. On the payment of said bonds and interest, the treasurer's authority to place the

money received from licenses in the said fund ceased. Thereafter the auditor had no authority to even suggest that the revenue received from licenses be placed in said fund, but should have suggested or directed that the money derived from licenses and rents of capitol building be placed in the general fund of the state. The peremptory writ directing the defendant to place all moneys now in said capitol building fund in the general fund of the state must issue, and it is so ordered. It is also ordered that no costs shall be collected by the clerk in this suit.

Quarles and Huston, JJ., concur.